**UNITED STATES of America, Appellee,**

v.

**Ronald STOVER, Appellant.**

**No. 86–5322.**

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1987.

Decided July 2, 1987.

Rehearing Denied Aug. 17, 1987.

Bruce Ellison, Rapid City, S.D., for appellant.

Ted L. McBride, Asst. U.S. Atty., Rapid City, S.D., for appellee.

Before McMILLIAN, BOWMAN, and WOLLMAN, Circuit Judges.

WOLLMAN, Circuit Judge.

Defendant Ronald Stover appeals his conviction for possession of a firearm by a convicted felon in violation of 18 U.S.C. App. § 1202(a)(1).[1] He argues that the district court[2] erred in denying him an instruction on the defense of justification and in not allowing him to argue before the jury that his allegedly "innocent reason" for possessing the firearm negated the knowledge requirement of the statute. We affirm.

Officer Austin Watkins, a patrolman with the Oglala Sioux Tribal Police in Kyle, South Dakota, responded to a call during the late evening hours of September 26, 1985, regarding a fight between two individuals at an apartment building near the local school. Upon arriving at the scene, Officer Watkins observed Stover come out of the apartment building and sit on the step. Shortly thereafter Officer Watkins heard what sounded like the explosion of two firecrackers. As Officer Watkins approached Stover the latter stood up with a pistol in his hand, whereupon Officer Wat-

kins returned to his vehicle and called for assistance. Officer Watkins then attempted to locate Stover, who had disappeared into darkness. Within a few minutes two of Watkins superiors arrived at the scene, and the three officers conducted a search of the area. A woman within the apartment building called out that Stover was in the building. As the three officers were proceeding down the basement steps Stover tried to slip past them, whereupon the officers took him into custody. As they were doing this, they observed that Stover held in his right hand a revolver that was covered with a coat.

Stover testified that on the night in question he was at a party at his cousin's apartment waiting to meet with an individual he knew only as "John" concerning some money. When John arrived, Stover went out to the parking lot of the apartment building to talk with him. John then confronted Stover about the money Stover owed him. The two started arguing, and John pulled out a .22 caliber revolver, stating that he was going to shoot Stover, who was unarmed. John fired the revolver two or three times. Stover, uninjured, turned and ran back into his cousin's apartment, pursued by the gun-wielding John, who then fired a shot into the apartment ceiling. Stover then reached over and grabbed the weapon. A struggle ensued. Another shot was fired before Stover managed to wrestle the revolver away from John, who then promptly left the scene.

Stover waited in the hallway for five to ten minutes to see if John would return. When it was clear that John was not coming back, Stover placed the revolver on the floor of the hallway. Upon seeing the police arrive, he went outside and sat on the steps of the building. He then lit two firecrackers to make the police think that nothing had happened. Shortly thereafter he got up and ran. Stover then noticed the

---

**1.** The relevant portion of section 1202 provides:
  (a) Any person who—
    (1) has been convicted by a court of the States or any political subdivision thereof of a felony, and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any

firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

**2.** The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

police coming towards him from various directions; he went back into the apartment building, thinking that he had better get rid of the gun before the police came so as to protect his cousin's job and reputation. Once inside, he apparently changed his mind about secreting the weapon and decided to wait in the hallway for the police to arrive. When the police finally came upon him, he handed the weapon over to them.

There was more in Stover's testimony, of course, including his testimony regarding his fear of the Kyle police, based upon the beating they allegedly had given him in April of 1985 after they had arrested him for being intoxicated, but the foregoing summary outlines his theory of defense.

Stover contends that the district court erred in failing to grant him a jury instruction on the defense of justification.[3]

Although other courts have had occasion to address the question of whether the justification defense will be recognized in cases involving 18 U.S.C.App. § 1202(a)(1) and have found such a defense to exist,[4] we have not had the opportunity to decide this issue, and we conclude that we need not resolve it in this case. Whatever the validity of this defense in other circumstances, the defense of justification had no applicability to Stover's possession of the gun after John left the scene and Stover was no longer in any imminent danger of death or serious bodily injury.

Stover also contends that the trial court improperly denied his counsel the right to argue to the jury that Stover's temporary possession of the revolver was for a legally excusable or innocent reason, i.e., to hand it to the law enforcement officers. The trial court's action, argues Stover, was tantamount to directing a verdict for the government on an element of the offense.

We have examined the in-chambers colloquy between defense counsel and the trial court on this issue. We note that at the conclusion of the colloquy the trial court stated:

> Make your argument to the jury and I will rule on your argument as you give it. I am not going to preview it. I don't want you to preview your argument with the court and get an advanced ruling on something until I see it.

> \* \* \* \* \* \*

> It is difficult for the \* \* \* court to hypothesize what your argument is going to be and put it in the same terms that you might put it to the jury. I will let you argue and let the adversarial system work its way.

It appears, however, that defense counsel did not attempt to pursue the innocent-possession theory during his closing argument, notwithstanding the trial court's invitation that he make his argument as he saw fit, subject to the trial court's subsequent rulings. That being the case, we conclude that Stover waived any claim of error that he may otherwise have had with respect to this point.

The judgment of conviction is affirmed.

---

**3.** An accurate statement of the justification defense is found in *United States v. Gant,* 691 F.2d 1159 (5th Cir.1982), wherein the court stated:
> To interpose a justification defense to a charge of violating 18 U.S.C. app. § 1202(a)(1), defendant must show (1) that defendant was under an unlawful and "present, imminent, and impending [threat] of such a nature as to induce a well-grounded apprehension of death or serious bodily injury," (2) that defendant had not "recklessly or negligently placed himself in a situation in which it was probable that he would be

[forced to choose the criminal conduct]," (3) that defendant had no "reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,'" and (4) "that a direct causal relationship may be reasonably anticipated between the [criminal] action taken and the avoidance of the [threatened] harm."
> *Id.* at 1162–63 (citations and footnotes omitted).

**4.** *See e.g., United States v. Panter,* 688 F.2d 268 (5th Cir.1982); *United States v. Agard,* 605 F.2d 665 (2d Cir.1979).