**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**John C. ELDER, IV, Defendant–**
**Appellant.**

**No. 93–1513.**

United States Court of Appeals,
Seventh Circuit.

Submitted Dec. 10, 1993.

Decided Feb. 11, 1994.

Sherry K. Leckrone, Office of U.S. Atty., Springfield, IL, for plaintiff-appellee.

Michael Fuiten, Springfield, IL, for defendant-appellant.

Before EASTERBROOK and ROVNER, Circuit Judges, and REINHARD, District Judge.[*]

REINHARD, District Judge.

John C. Elder, IV, was indicted for possession of a firearm by a felon, 18 U.S.C. § 922(g)(1), manufacturing a weapon in violation of 26 U.S.C. § 5822, 26 U.S.C. §§ 5861(f) and 5871, possession of a firearm made in violation of 26 U.S.C. § 5822, 26 U.S.C. §§ 5861(c) and 5871, and possession of an unregistered firearm in violation of 26 U.S.C. § 5841, 26 U.S.C. §§ 5861(d) and 5871. The manufacturing-a-weapon count was dismissed, and a jury found Elder guilty of the three remaining counts. On appeal, Elder contends: (1) the evidence, while sufficient to show he possessed the shotgun on the date charged, failed to establish that his possession violated the statutes' purposes; (2) the trial court abused its discretion in admitting evidence of his prior bad acts under Fed. R.Evid. 404(b); and (3) the trial court erred in refusing to give his proffered jury instructions on the defenses of necessity and self-defense.

## I. FACTS

On January 9, 1992, Thomas Day, an acquaintance of Elder's, drove Elder to the office of Tony Gutierrez, a sergeant with the Illinois State Police. Upon arrival, Elder removed a cassette case containing a sawed-off 20 gauge shotgun from the bed of Day's truck and delivered it to Gutierrez.

According to Gutierrez, Elder telephoned him earlier that day and told him he was bringing him a package. Gutierrez identified government exhibits as being a sawed-off shotgun and carrying case which were given to him by Elder on January 9. Elder initially told Gutierrez that he had purchased the shotgun in its modified condition for $50.00 from William Cave.

After Gutierrez advised Elder that he was in a difficult situation because of his prior felony convictions, Elder changed his story and said that he had obtained the shotgun from Thomas Day and had lied initially to protect Day, who was also a convicted felon. Gutierrez talked to Day, in turn, about the specifics of his obtaining the shotgun, but Day was unable to answer some of Gutierrez's questions in that regard. When confronted by Gutierrez, Day admitted that the shotgun belonged to Elder and that Elder had asked Day to tell Gutierrez the shotgun was Day's.

Gutierrez then confronted Elder, who stated that he obtained the shotgun from Cave in its full length form and that he and Day had modified its barrel and stock length to its present form. Gutierrez did not arrest Elder or Day on January 9, 1992. According to Gutierrez, Elder has a history of being untruthful. Gutierrez admitted that he arranged for Elder to attempt to purchase drugs from Cave and that he indicated to Elder such an arrangement would be beneficial to Elder.

[*] The Honorable Philip G. Reinhard of the United States District Court for the Northern District of Illinois, sitting by designation.

Other government witnesses testified that they had seen the shotgun in Elder's possession on several occasions during the fall of 1991 and that he had participated in the actual modification of the gun. Specifically, Day identified the shotgun as one that Elder left at his home in October 1991 for Day to look at and purchase. According to Day, Elder asked him to assist in cutting off the gun, and together they did so. After the gun was modified, Elder kept it for awhile and then brought it back and asked Day to keep it for awhile. Day did in fact store the gun for Elder until Elder told him he wanted to take it to Gutierrez. Samuel Thomas testified that Elder lived with him from late September 1991 to the end of November 1992. During that time Thomas observed Elder carrying the cassette case with him every time he left the house. One Saturday morning Thomas observed Elder with the shotgun. He also saw Elder and Day cut part of the butt and barrel off the gun. Further, he saw Elder at a party where Elder removed the shotgun from the case and assembled it. It appeared at that time exactly as it did at trial. Elder attempted to sell the gun at the party.

Thomas Goacher first observed Elder with the gun in its unaltered state in August 1991 and on several occasions thereafter. On two such occasions, Elder attempted to sell the shotgun. Goacher admitted to having memory lapses. Selby Coady added that Elder once asked him to leave the shotgun overnight at Coady's house. According to Coady, he observed Elder and Day working on the gun on the front porch of Day's house. Coady also admitted having problems remembering past events. Charles Day, Thomas Day's brother, first observed the shotgun in its unaltered form when Elder brought it to Day's house wanting to sell it to Thomas Day. According to Charles Day, Elder decided to keep the shotgun because he wanted to saw it off.

Charles Sharp, a special agent with the United States Treasury Department's Bureau of Alcohol, Tobacco and Firearms (ATF), investigated Elder's involvement with the shotgun. According to Sharp, the shotgun was not registered to Elder. Special Agent Donald York of ATF testified that the shotgun had an overall length of 19½ inches and a barrel length of 12½ inches. York, as an expert, opined that the shotgun traveled in interstate commerce.

Elder objected to the government's introduction of the evidence pertaining to his possession of the shotgun during the fall of 1991 as evidence that he possessed the gun on January 9, 1992. The government argued the evidence was admissible as prior bad acts under Fed.R.Evid. 404(b) to show motive, opportunity, intent, knowledge, identity of the gun and absence of mistake. The district court overruled the objection.

At trial, after admitting to several prior felony convictions, Elder related a different version of events. He testified he delivered the shotgun to Sergeant Gutierrez in an effort to reconcile the past wrongs in his life. He first saw the shotgun at Thomas Day's home and did not bring it there. He also observed Day saw off the barrel and butt of the shotgun. He periodically saw the shotgun thereafter in Thomas Day's possession and in Day's truck. Elder observed Day exhibit signs of violence in early January 1992. He saw Day punch Day's mother in the face and throw Day's brother across the house. On January 9, 1992, Elder asked Day to drive him to Springfield to pick up some belongings stored there. On the way there, Elder noticed the sawed-off shotgun in Day's truck. Elder told Day that if he was stopped by the police Day would be looking at a lot of time in the Department of Corrections. Elder then explained that he needed to see Sergeant Gutierrez and convinced Day that Elder should give the shotgun to Gutierrez. Elder also believed that it was a "dangerous condition" that Day had the shotgun in light of the incident in which Day struck his mother and because of Day's temper.

Elder took the shotgun from the truck and delivered it to Gutierrez. He told Gutierrez that he was turning the gun in and did not want to know anything about it. According to Elder, Gutierrez told him he was in a lot of trouble and was looking at approximately fifty or sixty years for possessing it. At that point, Elder told Gutierrez that the shotgun belonged to Day and that he did not want

Day to get in trouble. Elder brought Day in, and Day admitted the shotgun belonged to him.

Gutierrez then conversed with Day apart from Elder. Following that conversation, Day stated he did not want to say anything else without seeing a lawyer. At that time, Elder, to protect Day, changed his story and said the gun belonged to him. He told Gutierrez that he purchased the shotgun in an unaltered condition and sawed it off and that Day did not have anything to do with the gun.

Elder then had a conversation with Gutierrez and Sharp wherein they discussed Elder making a drug purchase from William Cave. According to Elder, he was told his cooperation would be considered regarding his conviction for possession of the shotgun. Both he and Day were allowed to leave after the interview. Elder subsequently attempted to purchase drugs from Cave but was unsuccessful. Elder subsequently moved to Arkansas where he was later arrested.

On cross-examination, Elder admitted that he did not tell the police about Day's possession of the shotgun before January 9 nor turn in the shotgun before that date. He also admitted watching Day saw off the shotgun but denied participating in the process.

Elder proffered two jury instructions, among others, pertaining to the defense of necessity. Both instructions were refused. While a self-defense instruction is not contained in the record and there is no transcript of the conference on instructions, the government does not disagree that Elder requested the district court to give an instruction on self-defense, which the court refused to do.

## II. DISCUSSION

### A. Admissibility of Prior Bad Acts Evidence

■ While both Elder and the government in their briefs focus on and disagree over the admissibility of the evidence pertaining to Elder's prior possession of the shotgun under Rule 404(b), we consider Rule 404(b) to have no applicability to the contested evidence. For evidence of prior bad acts to be subject to the admissibility requirements of Rule 404(b), they must at the very least be "other acts" not intricately related to the charged offense. *United States v. Soria,* 965 F.2d 436, 442 (7th Cir.1992); *United States v. Sophie,* 900 F.2d 1064, 1076 (7th Cir.), *cert. denied,* 498 U.S. 843, 111 S.Ct. 124, 112 L.Ed.2d 92 (1990). In other words, direct evidence of an essential part of the crime charged is not covered by Rule 404(b). *See United States v. Benson,* 941 F.2d 598, 609 (7th Cir.1991).

■ In this case, the testimony of several government witnesses that Elder possessed the shotgun on numerous dates between fall 1991 and January 9, 1992 directly bears on the question of his possession of the gun on January 9, the date charged in the indictment. This is especially true in light of his theory at trial that he only momentarily possessed the gun on January 9 for the limited purpose of turning it over to Sergeant Gutierrez. As such, this evidence does not constitute "other acts" and need not meet the requirements of Rule 404(b).

■ Notwithstanding the inapplicability of Rule 404(b), this evidence must still be admissible under Rule 403. *See Sophie,* 900 F.2d at 1076. Elder, however, did not challenge this evidence under Rule 403, either in the trial court or in this court. Any question of its admissibility under Rule 403 is, therefore, waived. Even were we to consider it under Rule 403, however, we would find the evidence admissible under the abuse of discretion standard for evidentiary rulings applicable on review. *See United States v. Short,* 4 F.3d 475, 479 (7th Cir.1993). Its probative value is obvious and its admission was not unfairly prejudicial to Elder.

### B. Sufficiency of the Evidence as to Elder's Possession on the Date Charged

■ Elder contends that he was not proved guilty beyond a reasonable doubt of the three possession counts on the date charged, January 9, 1992, because the evidence shows he innocently possessed the shotgun on that date for the limited purpose of delivering it to the authorities. In making this argument, Elder concedes that the evi-

dence was sufficient to show he possessed the shotgun on the date charged.

■ We agree with Elder that the evidence clearly demonstrates his possession of the shotgun on the date charged. Our research has not disclosed any case recognizing the "innocent possession" defense urged by Elder under the circumstances here. While a justification defense might be available under the appropriate factual circumstances, *see United States v. Wheeler,* 800 F.2d 100, 107 (7th Cir.1986), as will be discussed later, this is not such a case. We have found no case that has allowed a defendant such as Elder to claim as a defense that he, as a convicted felon, took possession of an illegal weapon for the innocent purpose of turning it over to the proper authorities. While perhaps presenting a novel issue, we need not decide whether such a defense is available to Elder, however, as there is ample evidence for the jury to have concluded that his possession on January 9 was not innocent. Numerous witnesses testified to Elder's prior possession of the shotgun and to his having participated in its alteration. Elder does not challenge the credibility of these witnesses. Even if he did, their credibility is a matter solely for the consideration of the jury. *See United States v. Marin,* 7 F.3d 679, 688 (7th Cir.1993). Accordingly, based on the evidence in its entirety, it cannot be said that no rational jury could have found the essential elements of the crime beyond a reasonable doubt. *See United States v. Walker,* 9 F.3d 1245, 1249 (7th Cir.1993).

## C. Necessity Defense Instruction

■ Elder contends that he was entitled to a necessity defense instruction because the evidence demonstrated that he needed to take possession of the shotgun and turn it over to the authorities due to Thomas Day's prior violence towards Day's family. The standard of review for refused criminal jury instructions, as distinct from error alleged for instructions that were in fact given, provides that a defendant is entitled to an instruction on his theory of the case if: (1) he proposes a correct statement of the law; (2) his theory is supported by the evidence; (3) his theory of defense is not part of the

charge; and (4) the failure to include the instruction denied the defendant a fair trial. *United States v. Boykins,* 9 F.3d 1278, 1285 (7th Cir.1993) (citing *United States v. Church,* 970 F.2d 401, 408 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1009, 122 L.Ed.2d 157 (1993)). We have recently stated that the defense of necessity is available when: (1) a defendant reasonably believes that his criminal conduct was necessary to avoid harm more serious than that sought to be prevented by the statute defining the offense; and (2) given the imminence of the threat, there are no reasonable legal alternatives to violating the law. *United States v. Schulte,* 7 F.3d 698, 700 (7th Cir. 1993) (citing *United States v. Bailey,* 444 U.S. 394, 409–11, 100 S.Ct. 624, 633–35, 62 L.Ed.2d 575 (1980)).

■ Under the above-described necessity defense, Elder has not shown that such defense is supported by the evidence in this case. First, there is absolutely no evidence of any imminent threat to Elder or anyone else based on Day's possession of the shotgun. Second, there is no evidence showing a lack of reasonable legal alternatives to Elder taking possession of the shotgun. For example, he could have simply reported Day's possession of the shotgun to the proper authorities rather than delivering it himself. This is an especially reasonable alternative here where Elder had an established relationship with Sergeant Gutierrez. Finally, under these circumstances it cannot be said that Elder held a reasonable belief that his conduct in taking possession of the shotgun was necessary to avoid a more serious harm. As noted earlier, there was no evidence that Day had ever used the shotgun in a violent manner or that he was about to do so. In light of the evidence presented at trial, the district court correctly refused a necessity defense instruction.

## D. Self–Defense Instruction

Elder alternatively contends that a self-defense instruction should have been given "for the same reasons stated in support of the 'necessity' instruction." We have previously held that a felon charged with unlawfully possessing a firearm may be entitled to

a self-defense instruction if he demonstrates: (1) he was under unlawful and present threat of death or serious bodily injury; (2) he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) he had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and (4) a direct causal relationship between the criminal action and the avoidance of the threatened harm. *United States v. Wheeler,* 800 F.2d 100, 107 (7th Cir.1986); *see also United States v. Privolos,* 844 F.2d 415, 421 (7th Cir.), *cert. denied,* 488 U.S. 857, 102 L.Ed.2d 119 (1988) (recognizing possibility of self-defense "[w]here a convicted felon, reacting out of fear for the life or safety of himself, in the actual, physical course of a conflict that he did not provoke, takes temporary possession of a firearm for the purpose or in the course of defending himself.").

■ Without unnecessary elaboration, we conclude that Elder was not entitled to a self-defense instruction in this case. There is not one shred of evidence that Elder or anyone else was under an unlawful and present threat of death or serious bodily harm from Day. Consequently, it was not error for the district court to have refused Elder's self-defense instruction.

## III. CONCLUSION

For the foregoing reasons, the judgments entered by the district court on all three convictions are affirmed.

AFFIRMED.