**UNITED STATES of America, Appellee,**

**v.**

**Jibri ALI, also known as Charles L. Pirtle, Appellant.**

**No. 95–1074.**

United States Court of Appeals, Eighth Circuit.

Submitted May 18, 1995.

Decided Aug. 18, 1995.

Rehearing Denied Sept. 21, 1995.

Shannon P. O'Connor, Asst. Federal Public Defender, Omaha, NE (argued), for appellant.

Michael P. Norris, Asst. U.S. Atty., Omaha, NE, argued (Nancy A. Svoboda, on the brief), for appellee.

Before McMILLIAN, BEAM and HANSEN, Circuit Judges.

McMILLIAN, Circuit Judge.

Jibri Ali, a/k/a Charles L. Pirtle, appeals from a final judgment entered in the United States District Court[1] for the District of Nebraska upon a jury verdict finding him guilty of violating 18 U.S.C. § 922(g)(1) (felon in possession of a weapon). The district court sentenced defendant to 51 months imprisonment, three years supervised release, a special assessment of $50.00, and restitution in the amount of $525.00. *United States v. Ali*, No. 8:CR94–0055 (D.Neb. Dec. 12, 1994) (judgment). Defendant appeals on the basis of the following issues: (1) the government's use of a peremptory strike to eliminate an African American venireperson; (2) the instructions to the jury on the elements of the offense and the government's burden of proof; (3) the sufficiency of the evidence to support the jury's verdict; (4) the denial of his motion for a new trial based on newly discovered evidence; and (5) the denial of downward adjustments at sentencing for acceptance of responsibility and minimal or minor role in the offense. For the reasons discussed below, we affirm the judgment of the district court.

## Background

Defendant has a 1989 drug-related felony conviction from Nebraska for which he

---

1. The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

served four years in prison, from August 30, 1989, to August 30, 1993. On April 3, 1994, at approximately 11:00 p.m., defendant was in the front passenger seat of a black Monte Carlo traveling on 33rd Street in Omaha, Nebraska, when the car was pulled over by Omaha Police Officers Jeff Saalfeld and Mike Smith, who were traveling in a marked cruiser. The only other person with defendant in the Monte Carlo was the driver, Demond James, a/k/a Demond Briggs. The police officers stopped the Monte Carlo because it did not have a front license plate and the license plate in the back was registered to a green Oldsmobile. After the two officers approached the car, one on each side, Officer Saalfeld asked the driver for identification. At that time, Officer Saalfeld noticed what appeared to be a gun slightly protruding from underneath defendant's left leg. He indicated to Officer Smith that a gun was present. Officers Saalfeld and Smith then immediately ordered the two men out of the car. Officer Smith, who was on the passenger side of the car, did not see the gun until after defendant stepped out of the car. The gun was a loaded Raven .25 caliber semi-automatic pistol. The officers placed James and defendant under arrest.

Defendant was tried on one count of being a felon in possession of a firearm. 18 U.S.C. § 922(g)(1). Trial commenced on September 7, 1994. During voir dire, the government used a peremptory challenge to strike the only African American on the venire panel. Defendant objected to the government's peremptory challenge under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (*Batson*). The government explained the challenge on grounds that the prospective juror had stated that her father once had been charged with unlawful possession of a firearm, even though he had a permit for the firearm. The district court overruled defendant's *Batson* objection.

The trial lasted two days. Officer Saalfeld testified that the Monte Carlo was pulled over in a well-lit area and that, while he and Officer Smith were approaching the car, he did not observe either defendant or James make any movements. He further testified that, while he was standing by the car on the driver's side, he observed the barrel of the gun slightly sticking out from underneath defendant's left leg. Officer Smith testified that, after defendant exited the car, he observed the gun on the front seat of the car where defendant had been sitting. Defendant also testified at trial. He said that, as the Monte Carlo was being pulled over, James pulled the gun from a pocket and shoved it toward him, telling defendant to hide it. Defendant further testified that he did not move, hide, or even touch the gun, but simply froze. He admitted that he did not tell the police that the gun was not his, but explained that he said nothing because he was afraid both for himself and for James. Mike Hanna, an investigator for the federal public defender's office, also testified for the defense. He testified that he had diligently, but unsuccessfully, tried to locate James prior to the trial.

The jury returned a guilty verdict on September 9, 1994. Defendant moved for judgment of acquittal or for a new trial. On November 29, 1994, at a post-trial hearing on defendant's motions, Hanna testified that, after the trial was over, defendant informed defense counsel that James was in the Douglas County Corrections Center. Hanna then located James, who was being held on an unrelated matter, and interviewed James on November 3, 1994. Hanna tape-recorded the interview, and the transcript was received into evidence at the November 29 hearing. In the interview, James said that the gun was not his (James's) and that it was already on the front seat when he (James) got in the car. He said that the gun did not belong to defendant, nor did defendant know it was there. He also stated that the gun was between him and defendant when the police pulled the car over and that he (James) pushed it toward defendant, who refused to hide it. He also stated that he would testify on defendant's behalf. The district court denied defendant's motions for judgment of acquittal or for a new trial, finding the evidence sufficient to support the conviction and the proffered newly discovered evidence merely cumulative in view of defendant's own testimony at trial. *United States v. Jibri Ali,* No. 8:CR94–0055 (D.Neb. Dec. 2, 1994) (order).

At sentencing, the district court disagreed with the probation officer's recommendation in the presentence investigation report (PSI) that defendant receive a two-level downward adjustment for acceptance of responsibility, under U.S.S.G. § 3E1.1. The district court agreed with the recommendation that defendant not receive a four-level or two-level downward adjustment for being a minimal or minor participant in the relevant criminal activity, under U.S.S.G. § 3B1.2. The district court concluded that defendant's total offense level was 20, for a guideline range of 51 to 63 months. The district court sentenced defendant to 51 months imprisonment, three years supervised release, a special assessment of $50.00, and restitution in the amount of $525.00. Defendant appealed.

## Discussion

*Batson objection*

■ Defendant argues that the district court erred in denying his *Batson* objection. Defendant contends that the government's stated reason for striking the only African American venireperson was pretextual. Thus, defendant argues it was clearly erroneous for the district court to conclude that the government had proffered a permissible reason for striking juror 98 and that the prosecutor was not motivated by race.

To satisfy its burden to come forward with a racially neutral explanation for the strike, the prosecutor said

the reason that the United States struck that prospective juror, your Honor, is because she said her father had been charged with having a gun, illegally possessing a gun, when in fact he did have a permit. This is a gun case, your Honor.... [W]e are dealing with whether or not a gun was legally possessed, whether in fact a gun was even possessed by the defendant. And therefore we believe that since she indicated her father had been wrongfully pursued by the law enforcement for having possession of a weapon, ... we felt that her sympathies would be with the defendant in this case and that she would be

prejudiced against the United States' position.

Tr. at 151–52.

To support his pretext argument, defendant emphasizes the fact that juror 98 had also stated on voir dire that her father's experience would not affect her objectivity if selected as a juror. Defendant further points out that another prospective juror stated that her brother had been wrongfully ticketed by someone in the Omaha Police Department and yet that juror was not closely scrutinized by the government the way juror 98 was. Finally, defendant contends that there were other facts regarding juror 98's employment history which indicated that she "would [have been] an appropriate juror for the prosecution." Brief for Appellant at 27–28. Defendant argues that these factors, taken together, demonstrate that the explanation provided by the government was a mere pretext for purposeful discrimination and that the district court's finding to the contrary was clearly erroneous.

We think that the government's stated reason for striking juror 98 is precisely the type of proffer that the Supreme Court had in mind when it explained in *Batson* that, once a prima facie case has been established by the defendant, the prosecutor "must articulate a neutral explanation related to the case to be tried." 476 U.S. at 98, 106 S.Ct. at 1724. In the present case, not only was the government's reason race-neutral, it was also related to the particular case to be tried. As the prosecutor ably explained, juror 98's belief that her father had been wrongfully pursued by law enforcement authorities for unlawful possession of a firearm might cause her to sympathize with the accused, who was standing trial for unlawful possession of a firearm. In our opinion, the government's proffer was not the type of "implausible" or "fantastic" justification that would justify a conclusion by the district court that the reason proffered was merely a pretext for purposeful discrimination. *See Purkett v. Elem,* ___ U.S. ___, ___, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (per curiam) ("implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination"). We therefore hold that the

district court did not commit clear error in finding that the government's peremptory challenge was not racially motivated.

*Jury instructions*

 Defendant has two arguments regarding the jury instructions. First, defendant argues that the district court committed plain error[2] when it gave an instruction on the elements of the offense because the instructions did not specify that the government had to prove *each and every element* beyond a reasonable doubt. *See* Addendum to Brief for Appellant at 16a (Instruction No. 10). Defendant argues "[i]t is axiomatic that the Government must prove every element of the offense beyond a reasonable doubt." Brief for Appellant at 8 (citing *United States v. Ballew,* 40 F.3d 936, 941 (8th Cir.1994)). Defendant concedes that the district court did clarify this point in an instruction given later during the deliberations, in responding to a jury question on another issue. *See* Addendum to Brief for Appellant at 18a (Instruction No. 15). Defendant argues, however, that Instruction No. 15, although correct on this point, was "too little, too late." Brief for Appellant at 9.

Second, defendant argues that the district court erred in failing to provide a helpful and necessary clarification of the legal meaning of the term "possession." A jury question, which was sent to the court approximately forty minutes into the deliberations, stated "Need more clarification on actual and constructive possession." The defense proffered a "proposed clarifying instruction" which would have told the jury, in effect, that, in order to find that defendant *actually* possessed the gun, the jury would have to find that the gun belonged to defendant; in order to find that defendant *constructively* possessed the gun, the jury would have to find that defendant intentionally attempted to hide it. *See* Addendum to Brief for Appellant at 20a (Defendant's Proposed Clarifying Instruction). The district court rejected de-

fendant's proposed instruction and instead responded to the jury's question by charging them with Instruction No. 15, which referred the jury back to Instruction No. 11. Instruction No. 11 was patterned after Eighth Circuit Model Jury Instruction No. 8.02, except that a paragraph was added at the end at the request of defendant; that last paragraph stated that proximity does not equal possession. *See* Addendum to Brief for Appellant at 17a (Instruction No. 11). Defendant concedes that he did not object to Instruction No. 11 at the instruction conference and further concedes that Instruction No. 11 does not misstate the law. He argues, however, that the district court erred in rejecting his "proposed clarifying instruction" because the instructions, taken as a whole, confused the jury and nullified his defense. More specifically, he maintains that the district court's reliance on Instruction No. 11 was improper because it permitted the jury to find that defendant unlawfully possessed the gun, even if the jury believed defendant's version of the facts, i.e., that James shoved the gun under defendant's leg and defendant simply froze without forming the intent to exercise control over it.

In response, the government notes that Instruction No. 10 was patterned after Eighth Circuit Model Instruction No. 6.18.922, which mentions the government's burden of proof only in connection with the element requiring that the firearm have traveled in interstate commerce. The government submits "it is not plain error for the District Court to follow approved jury instructions."[3] Brief for Appellee at 16. The government further contends that the district court was not trying to correct an error when, in giving Instruction No. 15, the court stated that the government must prove each element beyond a reasonable doubt. In any case, the government argues, even if Instruction No. 10 was improper, Instruction No. 15 was neither too little nor too late because it

---

2. Defendant concedes that the standard of review is plain error because he did not object to Instruction No. 10 at the instruction conference. *See United States v. Ryan,* 41 F.3d 361, 366 (8th Cir.1994) (where no objection to instruction was made at trial, proper standard of review on appeal is plain error).

3. We note that the Eighth Circuit Model Jury Instructions have not been approved en masse by our court. We "approve" of the model instructions only as they are individually litigated and upheld by this court on a case-by-case basis.

stated, among other things, that "[t]o find the defendant ... guilty in this case, you must find that the government, by evidence beyond a reasonable doubt, has proved each element of the crime charged against the defendant," Addendum to Brief for Appellant at 18a (Instruction No. 15), and because it was given before the jury reached its verdict.

As to Instruction No. 11, the government argues that it properly defined actual and constructive possession and that no error occurred in the district court's rejection of defendant's "proposed clarifying instruction."

■ Upon review, we first hold that plain error did not result from the district court's failure to state in Instruction No. 10 that the government had the burden to prove each and every element beyond a reasonable doubt because that information was given to the jury in another instruction, in a timely manner. When reviewing a jury instruction for plain error, we follow a three-step analysis: "(1) the district court must have committed an error, (2) that error must be plain, i.e., it must be clear under current law, and (3) the error must affect the defendant's substantial rights." *United States v. Ryan,* 41 F.3d 361, 366 (8th Cir.1994) (*Ryan* ) (citing *United States v. Olano,* —— U.S. ——, —— - ——, 113 S.Ct. 1770, 1776–78, 123 L.Ed.2d 508 (1993) (*Olano* ); *United States v. Montanye,* 996 F.2d 190, 192 (8th Cir.1993) (en banc)). The party asserting plain error has the burden of establishing that the requirements have been met. *Ryan,* 41 F.3d at 366. If, on review, this court finds that all three factors have been demonstrated, we have the discretion to correct the error. "We should exercise that discretion when the error results in a miscarriage of justice or 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.' " *Ryan,* 41 F.3d at 366 (quoting *Olano,* —— U.S. at ——, 113 S.Ct. at 1778). In the present case, we agree with defendant's contention that a failure to inform the jury of the government's burden to prove each and every element of the offense would be an error under clearly established law and that the district court, initially at least, failed to do this. Thus, had Instruction No. 15 not been given, the first and second requirements under *Olano* would have been met. However, we review the instructions as a whole, not piecemeal. Because we find that the district court corrected its initial error in a meaningful and timely manner when it charged the jury with Instruction No. 15,[4] we hold that defendant has failed to show either that an error under clearly established law was actually committed or that his substantial rights were affected. Accordingly, the district court did not commit plain error in this instance.

■ Furthermore, we find no error in the district court's response to the jury's request for "clarification on actual and constructive possession." The court's response to the jury's request was to refer the jury to Instruction No. 11, which the jurors had with them during their deliberations. Instruction No. 11 stated

The law recognizes several kinds of possession of a thing. A person may have either actual possession or constructive possession. Also, a person may have sole or joint possession.

A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of that thing.

A person who, although not in actual possession, has both the power and the intention at a given time to exercise control over a thing, either directly or through another person or persons, is then in constructive possession of the thing.

If one person alone has actual or constructive possession of a thing, the person has sole possession of the thing. If two or more persons share actual or constructive possession of a thing, then the persons have joint possession of the thing.

4. According to documents in the record, the case was submitted to the jury at 4:07 p.m. on September 8, 1994. The jury submitted the written request for clarification from the court at approximately 5:00 p.m., and then was called back to court at 5:20 p.m. having not reached a verdict yet. The district court sent the jury home under orders that they return at 9:00 a.m. the following morning. Upon the jury's return to court at 9:00 a.m., on September 9, 1994, the district court read them Instruction No. 15 and sent them back to resume their deliberations. The jury deliberated further and returned a verdict later that morning.

Whenever the word "possession" has been used in these instructions it includes actual or constructive possession as well as sole or joint possession.

Proximity to a thing is not necessarily possession of the thing, but is a circumstance which may be considered in determining whether a person has possession of a thing.

Addendum to Brief for Appellant at 17a.

This instruction presents a legally correct definition of possession. Our court has on many occasions approved the language used by the district court in the present case. *See United States v. Johnson,* 857 F.2d 500, 501 & n. 2 (8th Cir.1988); *United States v. Montgomery,* 819 F.2d 847, 851–52 (8th Cir.1987); *United States v. Henneberry,* 719 F.2d 941, 945 (8th Cir.1983), *cert. denied,* 465 U.S. 1107, 104 S.Ct. 1612, 80 L.Ed.2d 141 (1984); *Sewell v. United States,* 406 F.2d 1289, 1293 & n. 3 (8th Cir.1969). We also note that nothing in the statute required the district court to instruct the jury that the possession must be intentional or purposeful. Section 922(g) simply provides "[i]t shall be unlawful for any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or affecting commerce, any firearm or ammunition." [5]

Defendant's theory of the case therefore does not involve a question of whether or not defendant legally possessed the gun, but rather, whether or not defendant's actions might have been legally excused by innocent reasons. In *United States v. Stover,* 822 F.2d 48, 50 (8th Cir.1987), the defendant sought to argue to the jury the specific theo-

ry that his temporary possession of a revolver "was for a legally excusable reason, i.e., to hand it to the law enforcement officers." *Id.*[6] In that case, we noted that the district court did provide the defense with an opportunity to argue his innocent possession theory, but the defense declined to argue the theory to the jury. Thus, we held on appeal that the defendant had waived any claim of error he might have had on this issue. *Id.*[7]

In the present case, defendant is asserting that his physical possession of the gun was for innocent reasons because it was involuntary. However, instead of seeking to have this theory submitted to the jury in a separate instruction, he sought to have the district court give the jury an unduly narrow and legally inaccurate instruction on the meaning of possession. Defendant's "proposed clarifying instruction," which the district court declined to read to the jury, stated the following.

Instruction No. 11 is an accurate definition of actual and constructive possession under the law. As an aid to assist you in applying this instruction, the following is a summary of the Government's and Defendant's theory as it relates to actual and constructive possession.

Neither the Government [n]or the Defendant contest[s] the fact that the Defendant had knowledge of the presence of the firearm.

The Government asserts that the Defendant had actual possession of the firearm if it was his. If the firearm was Demond James', the Government asserts that the Defendant had constructive or actual pos-

---

**5.** In discussing the language of § 922, the Supreme Court opined that Congress "sought broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous. These persons are barred by the Act from acquiring firearms by any means." *Barrett v. United States,* 423 U.S. 212, 218, 96 S.Ct. 498, 502, 46 L.Ed.2d 450 (1976) (cited in *United States v. Paolello,* 951 F.2d 537, 541 (3d Cir.1991)).

**6.** In *United States v. Stover,* 822 F.2d 48, 49 & n. 1 (8th Cir.1987) (*Stover*), the defendant had been charged with violation of the former 18 U.S.C. § 1202(a)(1), which made it unlawful for "[a]ny person who ... has been convicted by a court

... of a felony ... [to] possess ... in commerce or affecting commerce ... any firearm."

**7.** Although we did not reach the issue of whether, or under what circumstances, a defense based upon innocent reasons might be available in a felon-in-possession case, our holding in *Stover* does not foreclose the possibility that such a defense could be used. *But see United States v. Elder,* 16 F.3d 733, 738 (7th Cir.1994) (*Elder*) ("[w]e have found no case that has allowed a defendant ... to claim as a defense that he, as a convicted felon, took possession of an illegal weapon for the innocent purpose of turning it over to the proper authorities").

session over it if he intentionally attempted to hide it.

The Defendant asserts he was not in actual possession of the firearm because it was Demond James'. He asserts that he was not in constructive possession over it because he did not intentionally attempt to hide it.

Unless you believed that the Government proved beyond a reasonable doubt its assertion as to possession as set out in Element No. 2, as well as the other two elements of Instruction No. 10, you must find the Defendant not guilty of this crime.

Addendum to Brief for Appellant at 20a.

This proposed instruction not only mischaracterized the government's position, it also erroneously implied that, in the present case, actual possession required ownership of the gun and constructive possession required an attempt to hide it. Thus, the district court did not err in refusing to read defendant's "proposed clarifying instruction" to the jury because it contained an inaccurate statement of the law. "[A] party is entitled to an instruction reflecting the party's theory of the case if a timely request is made and the proffered instruction is supported by the evidence *and correctly states the law.*" *United States v. Montgomery,* 819 F.2d 847,

851–52 (8th Cir.1987) (emphasis added); *accord United States v. Elder,* 16 F.3d 733, 738 (7th Cir.1994) (*Elder*) (a defendant is entitled to an instruction on his theory of the case if it correctly states the law, his theory is supported by the evidence and is not part of the charge, and the failure to include the instruction would deny the defendant a fair trial).[8] Therefore, the district court did not err in relying on its Instruction No. 11 in responding to the jury's request, and in refusing to give defendant's "proposed clarifying instruction." [9] We hold that the district court did not commit reversible error in instructing the jury.

*Sufficiency of the evidence*

■ Defendant further argues that there was insufficient evidence to support the jury's verdict. Defendant contends that "the evidence was insufficient to prove that Defendant intentionally and voluntarily possessed the firearm." Brief for Appellant at 21. In reviewing a defendant's challenge for sufficiency of the evidence, we view the evidence in the light most favorable to the government, giving it the benefit of all reasonable inferences supporting the jury verdict. *United States v. Reed,* 47 F.3d 288, 290 (8th Cir.1995). The verdict may be based in whole or in part on circumstantial evidence. *United States v. Foote,* 898 F.2d 659, 663 (8th

8. In *Elder,* 16 F.3d at 738, the defendant asked for a necessity defense instruction on grounds that the evidence showed it was necessary for him to take possession of the gun in order to turn it over to authorities. The Seventh Circuit affirmed the district court's denial of the instruction on grounds that the necessity defense, which requires the presence of an imminent threat, was not supported by the evidence. *Id.*

9. Because defendant failed to seek a proper instruction on his innocent possession theory, we need not, and do not, decide at this time whether an "innocent reasons" defense is available under § 922(g). We do note, however, that many circuits have recognized a "justification" defense in § 922 cases. The justification defense (which would not apply in the present case) typically requires the defendant to show: (1) that he or she was under an unlawful and present threat of death or serious bodily harm; (2) that the defendant had not recklessly placed himself or herself in a situation necessitating criminal conduct; (3) that there was no reasonable legal alternative; and (4) that there was a direct causal relationship between the criminal conduct and avoid-

ance of the threat. *United States v. Perrin,* 45 F.3d 869, 873–74 (4th Cir.1995); *see also United States v. Paolello,* 951 F.2d 537, 542–43 (3d Cir. 1991); *United States v. Singleton,* 902 F.2d 471, 472 (6th Cir.), *cert. denied,* 498 U.S. 872, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990); *United States v. Lemon,* 824 F.2d 763, 765 (9th Cir.1987); *United States v. Vigil,* 743 F.2d 751, 756 (10th Cir.), *cert. denied,* 469 U.S. 1090, 105 S.Ct. 600, 83 L.Ed.2d 709 (1984); *United States v. Gant,* 691 F.2d 1159, 1162–63 (5th Cir.1982). Our court has yet to decide whether the justification defense is available in § 922 cases. *United States v. Martin,* 62 F.3d 1009, 1012 (8th Cir.1995) (affirming district court's denial of defendant's motion in limine seeking leave to present a justification defense; "even if we were to join those circuits which have recognized a defense of justification to 18 U.S.C. § 922(g)(1), that defense would be unavailable to [defendant]" under the facts of the case); *United States v. Redding,* 16 F.3d 298, 300 n. 2 (8th Cir.1994) ("[w]e assume, but do not decide, that a justification defense is cognizable in cases involving 18 U.S.C. § 922(g)"); *Stover,* 822 F.2d at 50 ("we have not had the opportunity to decide this issue, and we need not resolve it in this case").

718

Cir.1990). The government's evidence tended to show, among other things, that the Monte Carlo was pulled over in a well-lit area, that neither James nor defendant made any movements as Officer Saalfeld and Officer Smith approached the car, and that, when the officers reached the car, the gun was underneath defendant's left leg with only the end of the barrel slightly protruding. From this evidence, the jury could reasonably have inferred that defendant had not only possessed the gun, but had deliberately attempted to conceal it. Thus, we hold that the evidence was sufficient to sustain defendant's conviction. *Accord Elder,* 16 F.3d at 738 (where defendant claimed that on one occasion he took possession of a gun solely for the innocent purpose of turning it over to the police, evidence was sufficient to support the defendant's conviction under § 922(g) because there was ample evidence for the jury to conclude that the defendant's possession was not innocent).

*Newly discovered evidence*

■ Defendant also argues that the district court abused its discretion in denying his motion for a new trial based on newly discovered evidence. The evidence defendant relies upon is the statement obtained from James by Mike Hanna, after defendant's trial was over. Defendant summarizes James's statement as follows.

[James] acknowledged that he was driving the car at the time of the traffic stop. He stated that the gun was on the front seat when he [James] got in. He further indicated that the gun did not belong to Defendant nor did Defendant know it was there. He stated that because the car was stopped for having no plates, he shoved the gun across the seat toward Defendant, who refused to hide the gun.

Brief for Appellant at 6. The district court held that, under the five-part test set forth in *United States v. Liebo,* 923 F.2d 1308, 1313 (8th Cir.1991) (*Liebo*), James's statement was not the type of new evidence which would justify a retrial. We agree.

■ Under *Liebo,* a defendant seeking a new trial based upon newly discovered evidence must demonstrate that all of the following criteria have been met: (1) the evidence was in fact newly discovered since the trial; (2) the defendant has alleged facts from which the court may infer diligence on the defendant's part; (3) the evidence relied upon is not merely cumulative or impeaching; (4) the evidence is material to the issues involved; and (5) the evidence is of such a nature that, on a new trial, it would probably produce an acquittal. 923 F.2d at 1313; *see also United States v. Wallace,* 578 F.2d 735, 742 (8th Cir.), *cert. denied,* 439 U.S. 898, 99 S.Ct. 263, 58 L.Ed.2d 246 (1978). The district court held, and we agree, that James's statement did not satisfy all of the above criteria. The facts that he alleged are cumulative in light of defendant's own testimony at trial in all respects except that James did not indicate that the gun was ever actually touching defendant's leg, and James claimed that the gun was on the front seat of the car when he entered, not in his pocket. By contrast, defendant admitted the gun was touching his leg and he claimed that, as James pulled the car off the street into the parking lot, James took the gun from the area of his jacket pocket and slid it across the seat. The assertion by James that the gun was on the front seat of the car would, if anything, probably be damaging to defendant's case on a new trial because, if true, it might suggest that defendant was aware of the gun's presence in the car. Moreover, as the district court noted, the fact that James did not indicate that the gun was under defendant's leg would not likely produce an acquittal because defendant himself had already testified at trial that the gun was touching his leg. Accordingly, we hold that the district court did not abuse its discretion in denying defendant's motion for a new trial.

*Sentencing*

■ Finally, defendant challenges several aspects of his sentence. Defendant argues that the district court erred in denying him two possible downward adjustments under the sentencing guidelines: (1) a two- or four-level downward adjustment for minor or minimal role in the offense, U.S.S.G. § 3B1.2, and (2) a two-level downward adjustment for acceptance of responsibility, U.S.S.G.

§ 3E1.1. As to his role in the offense, defendant argues that he was substantially less culpable than the average participant and that he was, in fact, plainly the less culpable of the two participants. This argument is, of course, based upon the assumption that the facts were as defendant claims, i.e., that, unbeknownst to defendant, James had the gun in his pocket and shoved it under defendant's leg just moments before the officers came upon the car. As to his claim that he accepted responsibility, defendant highlights the recommendation stated in the PSI that this downward adjustment be given. The probation officer who prepared the PSI was compelled by the argument—which defendant now makes on appeal—that defendant accepted responsibility by admitting at trial that the gun was touching his leg, and that the only basis for his disclaimer of responsibility was his reasonable interpretation of the application of the law to the facts. Again, this argument assumes that the facts were as defendant claims. Defendant acknowledges that this adjustment is ordinarily not available where a defendant goes to trial; he notes, however, that the election of a trial does not per se preclude the availability of the adjustment. Finally, defendant argues that the district court's denial of the adjustment is logically inconsistent and is unfair in light of the district court's reasons for denying him a new trial. On the one hand, he argues, he has been held accountable for voluntarily admitting that the gun was touching his leg; yet, on the other hand, he gets no credit at sentencing for his judicial admission.

In response, the government argues that the district court did not clearly err in finding that defendant's role was neither minimal nor minor in light of the jury's finding that defendant knowingly possessed a loaded semi-automatic weapon. In fact, the government argues, based on the evidence presented at trial, it would not have been clear error for the district court to conclude that the gun actually belonged to defendant. As to defendant's claim that he accepted responsibility, the government argues that the district court correctly noted that defendant has never accepted responsibility for possessing the gun. Even at sentencing, the government states, defendant continued to deny responsibility and claimed that the prosecution was motivated not by substantial evidence but by defendant's race. In support of its position, the government cites *United States v. Patterson*, 885 F.2d 483, 485 (8th Cir.1989), in which this court affirmed the district court's denial of a downward adjustment for acceptance of responsibility where the defendant admitted that he had intentionally possessed a gun but argued that it was for protection of his family and therefore excused. The government also cites *United States v. Franik*, 7 F.3d 811, 813 (8th Cir.1993) (*Franik*), in which the parole officer recommended that the defendant receive a downward adjustment for acceptance of responsibility because the defendant admitted to the parole officer that he had possessed the gun. The district court denied the adjustment, however, because the defendant did not admit that he had possessed the gun until after the jury had convicted him. *Id.* Again, this court affirmed the district court's finding on grounds that it was not clearly erroneous. *Id.* The government argues that the present case is factually even more favorable to the government's position than *Patterson* and *Franik* because here defendant has never admitted that he *possessed* the gun.

Upon review, we hold that the findings of the district court at sentencing, which defendant now challenges, are not clearly erroneous. Accordingly, the judgment of the district court is affirmed.