UNITED STATES of America, Appellee,

v.

Tonjia EUBANKS, Appellant.

No. 95–1791.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1995.

Decided Oct. 24, 1995.

Rehearing Denied Nov. 28, 1995.

---

1. The Honorable Richard H. Battey, Chief Judge, United States District Court for the District of South Dakota.

Roy Gean, III, argued, Fort Smith, AR, for appellant.

Paul Holmes, III, argued, Fort Smith, AR, for appellee.

Before WOLLMAN, JOHN R. GIBSON, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

WOLLMAN, Circuit Judge.

Tonjia Eubanks was convicted by a jury in the district court [1] on two counts of embezzling money from the federally insured bank where she worked as a teller, in violation of 18 U.S.C. § 656 (Supp. V 1993). On appeal, Eubanks challenges the government's use of a peremptory strike to remove the only black venireperson from the jury panel, and she questions the sufficiency of the evidence against her. We affirm.

The government charged Eubanks with embezzling bank funds on eleven different occasions during January and February 1994, totalling $44,900. The government alleged that Eubanks used interdepartmental transfer tickets (IDTs) to escape detection for several weeks before an employee in the accounting office noticed stale-dated IDTs that were not properly matched. Tellers fill out IDTs when they need to sell money from their drawers to the vault or to another teller to avoid having too much cash in their drawers. The teller selling money must fill in the IDT with his or her initials, the initials of the teller receiving the money, the amount of money, and the denomination. The IDTs are in two parts, and the teller runs the white part through his or her teller machine and

---

1. The Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas.

sends it through bank processing and gives the pink part, with the money, to the teller buying the money.

Mary Deaton, the bank's accounting clerk responsible for balancing the IDTs on the general ledger, testified that she receives both the pink and white halves after they have been processed through the bank and pairs them by serial number. She also runs a tape every day of all unmatched white and pink halves that are outstanding. She then adjusts the general ledger balance for the outstanding IDTs, with the result that the ledger balance should be zero. Deaton also periodically goes through the stack of outstanding IDT halves to see if any of them have stale dates. In March 1994 she found the white halves of eleven IDTs with stale dates. She found that all eleven IDTs were from Eubanks and that they did not identify the teller receiving the money.

When she was questioned about the IDTs, Eubanks said she had sold the money to other tellers, but she did not remember to whom. She could not provide any further information about the missing pink halves or the cash. The government alleged that Eubanks took the cash from her drawer, ran the white half of the IDT through her teller machine so she would balance, and discarded the pink half.

The government produced evidence that during January and February, Eubanks purchased cashier's checks for $4,200 and $1,000 to pay credit card balances. She also purchased carpeting and furniture for her mother's home totalling more than $3,500 and a stereo, alarm system, and body work for her car totalling more than $1,600. Eubanks also deposited $1,000 in her checking account to cover the overdrawn balance and threw a birthday party for her mother that cost more than $800. Eubanks, her mother, and her sister testified that the money for the expenditures came from loans and contributions from her sisters and father and from Eubanks's income tax return and that Eubanks's mother bought her own furniture and carpeting.

## I.

Eubanks first argues that the government improperly used a peremptory challenge to strike the only black venireperson from the jury panel based on his race, in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Under *Batson*, after the defendant makes a prima facie case of purposeful discrimination in the government's use of peremptory challenges, the government has the burden to offer a race-neutral explanation for the strikes. The defendant may then show that the government's reasons are pretextual. The court's ultimate finding on the discrimination issue will be set aside only for clear error. *United States v. Carr*, 67 F.3d 171, 175 (8th Cir. 1995).

Upon Eubanks's challenge to the government's use of a peremptory strike to remove Earl Jones from the jury panel, the government stated that it had stricken Jones because he had pleaded nolo contendere to a felony gun charge fifteen years earlier and had been fined and given a five-year court probation. Jones stated that he did not think he was given a "square deal" because of his belief that he should be able to protect himself, but that he thought he could give the government a fair trial. The government also stated that Jones had bad feelings toward the prosecuting attorney because of the incident. The district court found that the government's challenges were properly based on race-neutral reasons.

Eubanks argues that the government's reasons were pretextual for several reasons: Jones was aware that his conviction had occurred in state rather than federal court; he had not indicated any bad feelings toward the state prosecuting attorney, but indicated rather the charge was due to his "bad temper back in those days"; and that he had stated that he could be an impartial juror.

Although Jones was charged in state, rather than federal, court and seemed to understand that the federal prosecutor was in no way involved with his state charges, we

find that the district court did not clearly err in accepting the government's reason for the strike as race-neutral. Jones's prior felony charge, exacerbated by the fact that he believed he was not given a "square deal," gave the government legitimate cause to believe he could sympathize with the defendant. *See United States v. Ali*, 63 F.3d 710, 713 (8th Cir.1995) (juror's belief that her father had been wrongfully pursued by officers for gun possession could have caused her to sympathize with defendant on trial for the same thing); *United States v. Tolliver*, 61 F.3d 1189, 1202 (5th Cir.1995) (juror properly excused for potential antagonism to government stemming from battery conviction twenty-five years earlier and from a feeling that he was not treated fairly).

## II.

Eubanks next argues that the district court erred in denying her motion for a judgment of acquittal based on insufficiency of the evidence. She argues that no one saw her take any money from the bank, although she worked in close proximity with other tellers and under the surveillance of a video camera. She also argues that because the account ledger for the IDTs balanced on each of the eleven days that the partial IDTs were submitted, the bank did not show a loss of cash.

In reviewing the sufficiency of the evidence, we give the government the benefit of all reasonable inferences and will reverse the jury's verdict only if a reasonable jury must have had a reasonable doubt as to the government's proof of one of the essential elements of the crime. *United States v. Suppenbach*, 1 F.3d 679, 681–82 (8th Cir.1993). The essential elements of a crime may be proven by circumstantial evidence. *United States v. Kocher*, 948 F.2d 483, 487 (8th Cir.1991). The evidence showed that Eubanks sometimes kept her purse at her teller station and that many of her January and February expenditures were in $100 bills, which would have been the easiest denomination to take from her cash drawer. Thus, the record supports a finding that she had an opportunity to take the money without being noticed. *See also United States v. Wilcox*, 50 F.3d 600, 601–02 (8th Cir.1995) (conviction for removing timber from federal land upheld on circumstantial evidence); *United States v. Washington*, 528 F.2d 953, 953–54 (8th Cir.1975) (per curiam) (embezzlement of film from federal agency upheld on circumstantial evidence).

Eubanks's argument that the bank lost only pink pieces of paper, rather than money, fails to recognize how the bank operated. The pink IDT halves signified that cash was received. Thus, if the bank were to find the pink halves, it would also need to find the cash to go along with them. If Eubanks had given the cash to the vault teller or another teller without the pink half of the IDT, that teller would have been out of balance; however, none of the other tellers were out of balance. Eubanks's reliance on the fact that the general ledger account balances for each of those days that the unmatched IDTs were dated is misplaced. The general ledger balanced only because it was adjusted for the outstanding unmatched IDT halves. All outstanding IDTs would need to be matched for the general ledger to finally balance, but because the matches for the stale-dated IDTs could not be found, $44,900 had to be written off as a loss. This amount represents actual missing cash from the bank.

Accordingly, we conclude that the jury had sufficient evidence upon which to find Eubanks guilty of embezzlement. The conviction is affirmed.