# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1220

_____

United States of America,

    Appellee,

  v.

Tony John Luker,

    Appellant.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the Northern
\*   District of Iowa.
\*
\*
\*

_____

Submitted: October 19, 2004
Filed: February 2, 2005

_____

Before MURPHY, HEANEY, and BEAM, Circuit Judges.

_____

BEAM, Circuit Judge.

Tony Luker appeals from the district court's[1] denial of his motion to suppress and the court's grant of the government's motion in limine regarding the admission of evidence supporting Luker's justification defense. We affirm the well-reasoned judgment of the district court.

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

# I.    BACKGROUND

On June 7, 2003, Officer Bieber, joined shortly by two other officers, stopped Luker's vehicle for use of an excessively loud muffler in Anamosa, Iowa. Luker was under the influence of alcohol. After administering a field sobriety test, which Luker failed, Officer Bieber arrested Luker for driving drunk. Following the arrest, and because the officers were aware of Luker's history of methamphetamine use, Officer Bieber asked Luker if there was anything that could stick or poke him, and then performed a pat-down search. The officers then asked Luker if there was anything in Luker's vehicle that shouldn't be there or that they should know about. Luker said, "Just my .410 [shotgun]." All of these events occurred before Luker was <u>Mirandized</u>. The officers searched the vehicle, found the shotgun in Luker's trunk, and, because Luker was a convicted felon, he was eventually charged with being a felon in possession of a firearm under 18 U.S.C. § 922(g).

While in custody, Luker apparently explained to the officers that he had the shotgun in the trunk because he had been in fear for his life because his girlfriend's husband had threatened to "take him out" and beat him and shoot him. Luker also said this man had actually tried to run Luker down with his car.

Luker moved to suppress his answer regarding the shotgun because (1) he was not given his <u>Miranda</u> warnings prior to questioning that was likely to elicit an incriminating response, and (2) the shotgun in the trunk would not have been found during the search but for his response to the pre-<u>Miranda</u> questioning. The Magistrate Judge,[2] determined that the officer's question fell within the public safety exception to <u>Miranda</u> and denied Luker's motion to suppress. The district court adopted the Magistrate Judge's Report and Recommendation.

---

[2]The Honorable John A. Jarvey, Chief Magistrate Judge, United States District Court for the Northern District of Iowa.

Luker also wanted to raise a justification defense to the unlawful possession charge because, according to him, his life had been threatened. In a pretrial conference, the district court granted the government's motion in limine, holding that Luker was unable as a matter of law to establish a justification defense as regarding his possession of the gun and thus no mention could be made by either party at trial of any facts relating to Luker's excuse for having the shotgun in his trunk. That ruling culminated in a plea agreement conditioned on Luker's ability to appeal both that ruling and the denial of the motion to suppress, which he does at this time.

## II.    DISCUSSION

### A.    Justification Defense

We review the district court's grant of the government's motion in limine for abuse of discretion. ACT, Inc. v. Sylvan Learning Systems, Inc., 296 F.3d 657, 669 (8th Cir. 2002). Luker argues that the district court erred by granting the government's motion in limine excluding testimony intended by Luker to establish a justification defense.

We first note that the Eighth Circuit has never validated justification as a defense to a section 922(g) violation. See United States v. Taylor, 122 F.3d 685, 688 (8th Cir. 1997). We do not need to rule on the availability of a justification defense in this case because even if we were willing to grant a felon the opportunity to justify his unlawful possession of a gun in rare circumstances, Luker cannot establish such a defense in this case. See id.

To establish a justification defense, other circuits require proof of the following four elements:

"(1) that defendant was under an unlawful and present, imminent, and impending [threat] of such a nature as to induce a well-grounded apprehension of death or serious bodily injury, (2) that defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be [forced to choose the criminal conduct], (3) that defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm, and (4) that a direct causal relationship may be reasonably anticipated between the [criminal] action taken and the avoidance of the [threatened] harm."

United States v. Blankenship, 67 F.3d 673, 677 (8th Cir. 1995) (quoting United States v. Stover, 822 F.2d 48, 50 n. 3 (8th Cir. 1987) (alterations in original) (citing the elements of the defense from the Fifth Circuit)).

In reviewing Luker's offer of proof in this case, he is unable to satisfy these elements. There is no evidence that Luker was under an unlawful, present, imminent and impending threat such that he feared death or serious bodily injury. He speaks of previous death threats made by another man and that man's attempt to run him over in the street or "take him out." Whatever threat may have been posed, it surely was not present, imminent, or both, given Luker's conduct. If Luker had a sincere apprehension of death, it is unlikely that he would be out in public, late at night, and without his faculties due to the influence of alcohol, as he was on the evening in question. Such is inconsistent with the cautious and alert behavior that would be expected on the part of one so threatened. Further, it almost goes without saying that when the man making the threats is Luker's girlfriend's *husband*, no reasonable juror could surmise that Luker had not recklessly or negligently placed himself in a situation "in which it was probable that he would be [forced to choose the criminal conduct]." Id.

Finally, Luker fails to establish that he had no legal alternative to violating the law. As the district court noted, "Certainly, he had a chance to refuse to do the

criminal act and to avoid the threatened harm by other means and he elected not to do that." Although Luker alleges that he reported the threats to the Anamosa Police Department but that they refused to take any action, the police department has no record of this report and Luker cannot provide the exact date the report was made or the person to whom he reported.

Because Luker is unable to satisfy even one of the necessary prerequisites to a justification defense, we affirm the district court's ruling that prohibited Luker's use of the defense. The district court did not abuse its discretion.

## B.     Public Safety Exception to <u>Miranda</u>

We review the district court's factual findings in the order denying the motion to suppress for clear error and its legal conclusions de novo. <u>United States v. Briones</u>, 390 F.3d 610, 612 (8th Cir. 2004). "We will not affirm if the order is unsupported by substantial evidence, reflects an erroneous view of the applicable law, or leaves us with a firm and definite conviction that in light of the whole record a mistake has been made." <u>Id.</u>

As to the application of the public safety exception to <u>Miranda</u> in this case, the district court, relying upon <u>United States v. Williams</u>, 181 F.3d 945 (8th Cir. 1999), and <u>New York v. Quarles</u>, 467 U.S. 649 (1984), thoroughly and correctly analyzed the legal and factual aspects of this claim. We agree with the district court that the circumstances in the instant case fit the public safety exception to <u>Miranda</u>. The officers were aware of Luker's history of methamphetamine use and were concerned about needles or substances associated with such use in the car and thus the question concerning the contents of the vehicle was warranted. We see no reason to repeat the district court's analysis on this issue. <u>See</u> 8th Cir. R. 47B.

## III.  CONCLUSION

For the reasons stated above, we affirm.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent.  I would reverse the district court's holding that Luker's statement was admissible under the public safety exception to Miranda.[3]  New York v. Quarles, 467 U.S. 649, 655-56 (1984).

The government concedes that Luker was in custody and that no Miranda warning was given, but argues the officer's question–would they find "anything in the car . . . that shouldn't be in there" (Suppression Hr'g Tr. at 18)–was permissible under the public safety exception to Miranda.  Quarles, 467 U.S. at 655-56.  The public safety exception applies where there is an "objectively reasonable need to protect the police and the public from any immediate danger."  Id. at 659 n.8.  Statements are admissible under this exception only if the questions posed are "reasonably prompted by a concern for the public safety."  Id. at 656.  The questions must be necessary to secure the safety of officers or the public, and may not be designed solely to elicit testimonial evidence from a suspect.  Id. at 658-59.

The majority holds that the officer's night-time search of the car of a known felon involved with methamphetamine permitted questions about dangerous objects in the car.  See United States v. Williams, 181 F.3d 945, 953-54 (8th Cir. 1999).  The officers testified that they were concerned that needles or hazardous chemicals might injure them when they searched the car.  The only basis for this concern is the officers' unsupported assertions.  Anamosa Police Officer Burkholder stated that Luker was "involved with drugs and narcotics," (Suppression Hr'g Tr. at 7-8), but did

[3]Miranda v. Arizona, 384 U.S. 436 (1966).

not clarify how he was involved. He also conceded that there was "no outward indication" that there were any drugs or any weapons involved in this stop. (Id. at 10.) Anamosa Police Chief Menard, who actually questioned Luker, explained that he was concerned for his safety when searching the car because he knew that Luker "ha[d] been hanging out with" methamphetamine users.[4] (Id. at 17). There are no drug-related arrests or convictions in the record to suggest the majority's conclusion that Luker had a "history of methamphetamine use." See ante at 2.

Menard's belief that Luker associated with drug users did not by itself create an objectively reasonable threat to public safety. While the present case is similar in some respects to Williams, it lacks many of the factors that create concern for the safety of the officers.

Luker was stopped for a traffic offense. No drugs, drug paraphernalia, or weapons were found in the passenger compartment of Luker's car or on his person in a pat-down search. His involvement with methamphetamine was apparently limited to "hanging out" with methamphetamine users. Cf. Williams, 181 F.3d at 954 n.14 (noting that Williams had been arrested in the past for weapons possession, and was suspected of narcotics trafficking). The officers did not detect any odor of chemicals in the car. Luker was already arrested, handcuffed, and patted down when the officers questioned him. There were no other people in the area that might be harmed by the contents of his car and no one else in the car who might have posed a threat to the police officers.

---

[4]Interestingly, Menard also admitted that he asks questions like the one at issue in this case "[p]rimarily . . . every time I look through a vehicle." (Id. at 17.) This casts doubt on the majority's assertion that it was Luker's particular circumstances which led to Menard's questioning.

Admitting Luker's statement under these circumstances would expand the public safety exception far beyond its original scope.  I would reverse the district court and find that Luker's statement does not fall within the public safety exception.

_____