# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1337

_____

United States of America,

    Plaintiff - Appellee,

v.

Antonio Ray Liddell,

    Defendant - Appellant.

Appeal from the United States
District Court for the
Southern District of Iowa.

_____

Submitted:  October 16, 2007
Filed: February 25, 2008

_____

Before LOKEN, Chief Judge, GRUENDER and BENTON, Circuit Judges.

_____

LOKEN, Chief Judge.

Antonio Ray Liddell pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  As permitted by a condition in his plea agreement, Liddell now appeals the denial of his motion to suppress a post-arrest statement made without the warnings required by <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).  We agree with the district court[1] that the arresting officers' in-custody questioning fell within the public safety exception to <u>Miranda</u> established in <u>New York v. Quarles</u>, 467 U.S. 649 (1984).  Accordingly, we affirm.

_____

[1] The HONORABLE JAMES E. GRITZNER, United States District Judge for the Southern District of Iowa.

The following facts are undisputed. At approximately 12:45 a.m., Police Officer Michael Adney stopped a car driven by Liddell for a loud music violation. Adney arrested Liddell when a check revealed that he was barred from driving in Iowa. After the arrest, a pat-down search uncovered a bag of marijuana, $183 in cash, and two cell phones. Adney handcuffed Liddell and placed him in the patrol car. Meanwhile, Police Officer Jon Melvin arrived to assist and began to search Liddell's car incident to the arrest. When Melvin discovered an unloaded .38 caliber revolver under the front seat, he showed the gun to Adney and asked whether Liddell's person had been thoroughly searched after the arrest.

Adney removed Liddell from the patrol car and asked, referring to Liddell's car, "Is there anything else in there we need to know about?" Melvin added, "That's gonna hurt us?" Adney repeated, "That's gonna hurt us? Since we found the pistol already." Liddell laughed and said, "I knew it was there but . . . it's not mine," before telling the officers there were no other weapons in his car. Melvin completed the search of the car, finding .38 caliber ammunition and rolling papers used to make marijuana cigarettes.

Charged with unlawful possession of the firearm and with unrelated drug offenses, Liddell entered a conditional plea of guilty to the felon-in-possession charge after the district court denied a motion to suppress his highly incriminating statement that he knew the .38 revolver was under the front seat of his car. In the district court and on appeal, the government conceded that Liddell was in custody and had not been given <u>Miranda</u> warnings at the time the officers asked the question that elicited this incriminating statement. Thus, the issue is whether the statement is admissible under the public safety exception to <u>Miranda</u> as articulated by the Supreme Court in <u>Quarles</u> and applied by this court in <u>United States v. Williams</u>, 181 F.3d 945 (8th Cir. 1999), and <u>United States v. Luker</u>, 395 F.3d 830 (8th Cir.), <u>cert. denied</u>, 546 U.S. 831 (2005). "Whether facts support an exception to the <u>Miranda</u> requirement is a question of law" that we review *de novo*. <u>United States v. Lackey</u>, 334 F.3d 1224, 1226 (10th Cir.),

cert. denied, 540 U.S. 997 (2003); accord United States v. Talley, 275 F.3d 560, 561 (6th Cir. 2001).

In Quarles, the Supreme Court held that "there is a 'public safety' exception to the requirement that Miranda warnings be given before a suspect's answers may be admitted into evidence." 467 U.S. at 655. In this context, protection of the public safety includes protection of the police officers themselves. Id. at 658 n.7, 659. The exception does not depend upon the subjective motivation of the questioning officers. Instead, the Court adopted an objective standard: the exception applies when "police officers ask questions reasonably prompted by a concern for the public safety." Id. at 656, quoted in Williams, 181 F.3d at 953. It does not apply to "questions designed solely to elicit testimonial evidence from a suspect." 467 U.S. at 659.[2]

Liddell argues that the public safety exception does not apply because, at the time the officers asked the question that prompted his incriminating admission, "there was no longer an objective reasonable need to protect the police or the public from any immediate danger" because the revolver had been found, Liddell was handcuffed and under the control of the two officers, and there were no passengers or nearby members of the public who could have accessed or been harmed by the contents of Liddell's car. The district court rejected this contention, explaining:

_____

[2]Because this is an objective standard, and because police officers must react spontaneously to situations posing a threat to public safety, the public safety exception does not turn on the specific form of questions asked. See Williams, 181 F.3d at 953 n.13; United States v. Newton, 369 F.3d 659, 678-79 & n.8 (2d Cir. 2004). There can be no doubt that the question posed by the officers in this case was sufficiently focused on public safety to trigger the public safety exception. By contrast, the Court explained in Quarles, 467 U.S. at 659 n.8, the post-arrest questioning without Miranda warnings in Orozco v. Texas, 394 U.S. 324, 325-26 (1969), was "clearly investigatory."

The discovery of a firearm hidden in a vehicle would lead an officer to have an objectively reasonable concern that other, possibly loaded, firearms may also be in the vehicle which could cause harm to an officer if they were to happen upon them unexpectedly or mishandle them in some way. The accidental discovery of additional weapons poses a threat to officer safety and at the time the officers conducted their limited questioning of [Liddell], given the information then known to them, it was reasonable for the officers to believe this threat existed. There was no way for Officer Melvin or Officer Adney to know that the firearm found under the driver's seat was ultimately the only weapon or dangerous device located inside of the vehicle.

The district court's analysis is consistent with this court's controlling precedents. Our prior cases recognized that the risk of police officers being injured by the mishandling of unknown firearms or drug paraphernalia provides a sufficient public safety basis to ask a suspect who has been arrested and secured whether there are weapons or contraband in a car or apartment that the police are about to search. See Luker, 395 F.3d at 832 (public safety exception applied to post-arrest question whether there was anything in intoxicated driver's car the police should know about); Williams, 181 F.3d at 953-54 (public safety exception applied to post-arrest question, "is there anything we need to be aware of" in the suspect's apartment, because the police "could not have known whether other hazardous weapons were present . . . that could cause them harm if they happened upon them unexpectedly or mishandled them in some way"). Accord Lackey, 334 F.3d at 1227-28; contra United States v. Williams, 483 F.3d 425, 428 (6th Cir. 2007). Here, when the officers found Liddell's concealed .38 caliber revolver, they had good reason to be concerned that additional

weapons might pose a threat to their safety when they searched Liddell's car incident to a late-night arrest.

The judgment of the district court is affirmed.

GRUENDER, Circuit Judge, concurring.

Based on our circuit's precedents, I concur in the opinion of the Court. However, I write separately to explain my concern that our decisions applying the public safety exception to *Miranda* have strayed from the Supreme Court's tethering of the exception to the existence of exigent circumstances.[3]

As an alternative rationale in *Williams* and then followed in *Luker*, this court held that the public safety exception to *Miranda* applies to situations where a police officer could happen upon weapons or needles "unexpectedly or mishandle[] them in some way." *Williams*, 181 F.3d at 954. In so holding, this court applied the exception to the possible handling of an inherently dangerous instrumentality but neglected the Supreme Court's requirement of exigent circumstances associated with recovering the item. Therefore, I concur in the Court's opinion in this case, even though this record is bereft of evidence of exigent circumstances associated with the possible discovery of a weapon in Liddell's vehicle.

In *Quarles,* the Supreme Court recognized the public safety exception to *Miranda* and premised the applicability of this "narrow exception to the *Miranda* rule" on exigent circumstances. 467 U.S. at 658. There, Quarles, accused of armed rape, fled into a supermarket. When Quarles was arrested moments later, the police officers found him wearing an empty holster. Before giving *Miranda* warnings, the

---

[3]Exigent means "[r]equiring immediate action or aid; urgent." Black's Law Dictionary 614 (8th ed. 2004).

officers asked where the gun was located, and Quarles directed them to the gun's location. The Supreme Court upheld the admission into evidence of Quarles' statement because "[s]o long as the gun was concealed somewhere in the supermarket, with its actual whereabouts unknown, it obviously posed more than one danger to the public safety: an accomplice might make use of it, a customer or employee might later come upon it." *Id.* at 657. The Supreme Court stated that "[t]he exception will not be difficult for police officers to apply because in each case it will be circumscribed by the exigency which justifies it." *Id.* at 658. Throughout the opinion, the Court focused on the urgency of the situation. *See*, *e.g.*, *id.* at 657-58 ("We decline to place officers . . . in the untenable position of having to consider, often in a matter of seconds, whether it best serves society for them to ask the necessary questions without the *Miranda* warnings and render whatever probative evidence they uncover inadmissible, or for them to give the warnings in order to preserve the admissibility of evidence they might uncover but possibly damage or destroy their ability to obtain that evidence and neutralize the volatile situation confronting them."); *id.* at 658 ("[W]e recognize here the importance of a workable rule to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront."). The Supreme Court did not express any concern that a trained police officer discovering a weapon in an otherwise secured environment would justify applying the exception. Rather, the Court did express that the exception would apply when the public "might later come upon [the weapon]," thereby creating an immediately dangerous situation. *Id.* at 657.

The Supreme Court further stated that the public safety exception to *Miranda* applies when officers ask "questions reasonably prompted by a concern for the public safety" and not to "questions designed solely to elicit testimonial evidence from a suspect." *Id.* at 656, 659. However, the Court clarified that the exigency of the situation would distinguish between these types of questions. *Id.* at 659 n.8. To illustrate this point, the Court compared *Quarles* with *Orozco v. Texas*, 394 U.S. 324 (1969). *Id*. In *Orozco*, four police officers entered Orozco's boardinghouse and

awakened him. 394 U.S. at 325. Without giving *Miranda* warnings, the officers interrogated Orozco about a murder committed four hours earlier. The police asked if he had been present at the scene of the shooting, whether he owned a gun and where the gun was located. The defendant admitted that he was present at the scene, that he owned a pistol and that the pistol was located in the washing machine in a backroom of the boardinghouse. The *Orozco* Court held that all the statements should have been suppressed. *Id*. at 327. The *Quarles* Court stated:

> In *Orozco*, however, the questions about the gun were clearly investigatory; they did not in any way relate to an objectively reasonable need to protect the police or the public from any *immediate danger* associated with the weapon. In short there was no *exigency requiring immediate action* by the officers beyond the normal need expeditiously to solve a serious crime.

*Quarles*, 467 U.S. at 659 n.8 (emphasis added). Because the police reasonably suspected that Orozco committed murder with a gun, there existed a realistic possibility that the weapon was hidden somewhere in the boardinghouse. Had the Supreme Court believed the public safety exception applied to situations where officers could happen upon weapons "unexpectedly or mishandle[] them in some way," then the public safety exception would have been applicable in *Orozco*. However, the *Quarles* Court did not indicate that the inherent danger of a trained police officer discovering a weapon by itself was sufficient to justify the application of the exception. As I read *Quarles*, the public safety exception to *Miranda* applies only when (1) an immediate danger to the police officers or the public exists, or (2) when the public may later come upon a weapon and thereby create an immediately dangerous situation. Therefore, the public safety exception to *Miranda* would not apply to situations where officers could happen upon a weapon "unexpectedly or mishandle[] them in some way," unless some evidence of exigency is presented.

The record in this case does not establish the existence of exigent circumstances. Here, the police had removed Liddell from his vehicle, handcuffed him, conducted a pat-down search, and placed him into their patrol car. After the officers had secured both Liddell and his car, they began searching his vehicle. Upon finding an unloaded .38 caliber revolver under the front seat, the officers asked if anything else in the car could hurt them. After a discussion with Liddell, the officers completed the search of Liddell's car. Although the search of a vehicle that potentially contains a loaded weapon may well be inherently dangerous, the record does not establish that any immediate danger existed as a result of the possible presence of such a weapon in Liddell's car or that the public might have later come upon a weapon. There was no evidence, for instance, supporting the necessity of an immediate search or continued search of the vehicle by the officers, either because of some immediate safety concern or because the vehicle was to be left unsecured by the roadside where the public might gain access to any weapon left in it. Because Liddell was arrested for driving while barred, there was no immediate danger that Liddell would be allowed to return to his car where he might have access to a hidden weapon. Furthermore, there was no evidence that the officers could not safely impound and tow Liddell's car in order to conduct a search of it at a later time. Based on the record developed in the district court, the public safety concern was not related to any exigent circumstances but rather limited to the fact that the officers might have unexpectedly encountered or mishandled a weapon hidden in Liddell's vehicle.

Although the First Circuit agrees with our precedents, three other circuits do not. *Compare United States v. Fox*, 393 F.3d 52 (1st Cir. 2004) (applying the public safety exception on similar facts as in this case), *with United States v. Mobley*, 40 F.3d 688 (4th Cir. 1994), *United States v. Raborn*, 872 F.2d 589 (5th Cir. 1989), *and United States v. Williams*, 483 F.3d 425 (6th Cir. 2007). In *Mobley*, agents arrested the defendant at his front door and made a security sweep of the apartment, which revealed that Mobley was alone. 40 F.3d at 690. With Mobley outside of the apartment, the agents asked him whether anything in the apartment could be of danger

to the agents who would be conducting the search.  The Fourth Circuit held that the public safety exception to *Miranda* did not apply because the police had already secured the apartment and determined that no one else was present.  *Id.* at 693; *see also United States v. Melvin*, 2007 WL 2046735 (4th Cir. 2007) (per curium) (relying on *Mobley*, the court held that the public safety exception did not apply where officers questioned Mobley about whether he had a weapon in his car when the car was secured and already heading to the impound lot).  In *Raborn*, upon being stopped by DEA agents, Raborn exited his truck, removed a pistol from his holster and placed it inside the vehicle.  872 F.2d at 592.  The agents handcuffed Raborn and the other passenger and placed them on the ground outside.  Unable to locate the gun after a search of the front seat, one of the officers asked Raborn where he had placed it.  Raborn replied that the gun was under the seat cover.  The Fifth Circuit stated that "[the vehicle] had already been seized and only the police officers had access to the truck.  It is difficult therefore, to find that the public-safety exception applies." *Id.* at 595.  Finally, the Sixth Circuit has held that the public safety exception to *Miranda* applies only if "(1) . . . the defendant might have (or recently have had) a weapon, and (2) . . . someone other than police might gain access to that weapon and inflict harm with it." *Williams*, 483 F.3d at 428.

Based on *Quarles* and the limited record before us, I would conclude that the public safety exception to *Miranda* would not apply because there is no evidence that an immediate danger existed as a result of the possible presence of such a weapon in Liddell's car or that the public might have later come upon such a weapon.  Nonetheless, the public safety exception to *Miranda* applies because the fact that the officers might have unexpectedly encountered or mishandled a weapon hidden in Liddell's vehicle alone is sufficient to justify the application of the exception under *Williams* and *Luker*.

_____