# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 08-3696

———————

United States of America,                *

                               *

          Appellee,         *   Appeal from the United States

                               *   District Court for the

      v.                  *   Western District of Arkansas.

                               *

Jimmy Joe Watters,             *

                               *

         Appellant.       *

———————

Submitted:  April 16, 2009
Filed:  July 13, 2009

———————

Before WOLLMAN, MELLOY, and GRUENDER, Circuit Judges.

———————

WOLLMAN, Circuit Judge.

Jimmy Joe Watters pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), reserving the right to appeal the district court's[1] denial of his motion to suppress statements and physical evidence. Watters contends that police officers elicited post-arrest statements without first informing him of his rights and that the officers unlawfully searched his vehicle. Because the arresting officers' questioning fell within the public safety exception to

---

[1]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), and Watters consented to the search of his vehicle, we affirm.

I.

Ryleigh's bar is located on Dickson Street in Fayetteville, Arkansas.  There are several drinking establishments on Dickson Street, and the area is popular with college students.  The bars close at 2:00 a.m., and from the time the bartenders make the last call to the early morning hours, the Fayetteville Police Department typically receives an increased number of calls regarding alcohol-related disturbances and fighting.  The incident at issue here occurred just a few days before fall semester was scheduled to begin and at a time when patrons were starting to congregate in the street as the bars prepared to close.

Shortly after 1:00 a.m. on August 15, 2007, a dispatch went out that a man at Ryleigh's was trying to purchase methamphetamine, saying that he had a shotgun and that he was not going back to prison.  Officer Anthony Murphy responded to the call and approached a man who matched the dispatch description.  In light of the nature of the call, Murphy asked for permission to search, which the man granted.  No drugs or weapons were found on his person, and the man identified himself as Watters.

Watters appeared intoxicated, but responded appropriately to the officer's questions and seemed to understand their conversation.  Murphy initiated a background check and learned that Watters was a sex offender in delinquent status and that he had both drug and weapons charges against him.  Watters admitted that he had been arrested in the past, but denied making statements about buying methamphetamine, having a shotgun, or going back to prison.  Murphy arrested Watters for public intoxication, handcuffing his hands behind his back.

Officer Matthew Wright approached as Watters was being placed under arrest. Wright had verified with a witness that Murphy was speaking to the person who had been talking about buying drugs and having a gun. The witness reported that Watters had been with a woman that night. Both officers were concerned that Watters had been with other people and that his friends might have access to the gun.

Without giving <u>Miranda</u> warnings, Wright asked Watters if there was a gun somewhere on Dickson Street. In response, Watters asked if his girlfriend was going to be arrested. Wright said that he could make no promises and could work no deals, but that if Watters had something to tell him, Wright would try to work with him in any way possible. Watters asked Wright for a handshake, which was impossible because of the handcuffs, and then for a hug, which Wright gave him. Watters motioned towards his vehicle, saying, "there's a gun in the van." Murphy retrieved the keys from Watters's girlfriend and looked through the window into the van, where he saw the stock of a shotgun and a bandolier containing shells.

Even though he was not being questioned, Watters continued to talk about guns and drugs while he and Wright walked towards the van. Wright was unable to read Watters his <u>Miranda</u> rights until they arrived at the van. Watters acknowledged and then waived his rights. Despite his intoxication, Watters appeared to understand the nature of the events, and he consented to a search of the van, which revealed a loaded shotgun, shells, marijuana, and drug paraphernalia.

Following the entry of his conditional guilty plea, Watters was sentenced to ninety-eight months' imprisonment.

II.

Watters argues that his motion to suppress should have been granted because the officers failed to inform him of his <u>Miranda</u> rights before eliciting incriminating

testimonial evidence. Watters contends that the public safety exception announced in New York v. Quarles, 467 U.S. 649 (1984), does not apply because there were no exigent circumstances to justify dispensing with the Miranda warnings. We review the district court's factual findings in the order denying the motion to suppress for clear error and its legal conclusions *de novo*. United States v. Luker, 395 F.3d 830, 833 (8th Cir. 2005). "Whether facts support an exception to the Miranda requirement is a question of law." United States v. Liddell, 517 F.3d 1007, 1009 (8th Cir.), *cert. denied*, 129 S. Ct. 627 (2008), (quoting United States v. Lackey, 334 F.3d 1224, 1226 (10th Cir. 2003)).

In Quarles, the Supreme Court recognized "a 'public safety' exception to the requirement that Miranda warnings be given before a suspect's answers may be admitted into evidence." 467 U.S. at 655. The exception applies when officers ask "questions reasonably prompted by a concern for the public safety" and not to "questions designed solely to elicit testimonial evidence from a suspect." Id. at 656, 659; see also United States v. Everman, 528 F.3d 570, 572-73 (8th Cir. 2008), *cert. denied*, 129 S. Ct. 998 (2009), (public safety exception applied to post-arrest question and answer); Liddell, 517 F.3d at 1009-10 (same); Luker, 395 F.3d at 833-34 (same); United States v. Williams, 181 F.3d 945, 953-54 (8th Cir. 1999) (same).

The record reveals that the officers' questions were designed to locate a weapon that Watters might have hidden shortly before his arrest. Dickson Street is a bustling area that contains several places to stash a weapon. Patrons were leaving the area's drinking establishments at the time the officers were dispatched to Ryleigh's. The officers knew that Watters had claimed to have a gun with him that night and that he had been charged with firearm-related offenses in the past. The officers testified that they wanted to find the gun because it could have been accessible to Watters's friends or to the public. Wright testified that, "I wasn't concerned about the legality of the situation. I wanted to find a gun. If there was a gun out there, we needed to find it."

We agree with the district court that the officers' questions were prompted by a concern for public safety, and not solely to elicit testimonial evidence:

> In an area where bars are concentrated, people are inebriated, and volatile situations are routine, police officers cannot lightly discount a report that an intoxicated person is trying to buy methamphetamine, claiming to have a shotgun, and stating that he is not going back to prison. The mix of a person seeking a dangerous drug—one often associated with violence—with an extremely destructive weapon and a desperate attitude is a virtual recipe for violence. The police had no way of knowing, before they asked, whether Watters had a gun and if so, where it was and whether it might be located somewhere that it might fall into the hands of other people on Dickson Street.

D. Ct. Order of July 2, 2008, at 5.

III.

We review for clear error the district court's determination that Watters's consent to search his vehicle was voluntary. See United States v. Perry, 437 F.3d 782, 785 (8th Cir. 2006). "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Id. (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973)). Factors relevant to the voluntariness of a defendant's consent include whether the defendant was intoxicated, but intoxication alone does not render consent invalid. See Perry, 437 F.3d at 785 (listing factors relevant to the voluntariness of a defendant's consent); United States v. Castellanos, 518 F.3d 965, 969 (8th Cir. 2008) (recognizing that the mere fact of intoxication does not render consent involuntary). "In each case, the question is one of mental awareness so that the act of consent was the consensual act of one who knew what he was doing and had reasonable appreciation of the nature and

-5-

significance of his actions." Castellanos, 518 F.3d at 969 (quoting United States v. Rambo, 789 F.2d 1289, 1297 (8th Cir. 1986)).

Watters's intoxication is undisputed, but it does not invalidate his consent to search the van. The district court found that Watters was a man of mature years, whose criminal history would have familiarized him with the procedural safeguards available to him under the law. The incident occurred in a public place and lasted less than an hour. Watters was coherent and able to answer the officers' questions. Although Watters was under arrest, the officers did not threaten him, intimidate him, or make promises to him. Watters contends that Wright's statement that "he would try to work with [Watters] in any way possible" implied that Watters would get something in return for answering the officer's questions. Moments earlier, however, Wright had told Watters that he could not make any promises or work with Watters on any deals. We find no clear error in the district court's determination that Watters voluntarily consented to the search of his vehicle.[2]

---

[2]In its recitation of the undisputed facts, the district court's opinion stated:

> At the van, Officer Wright read Watters his Miranda rights, and then asked if they could search the van. He told Watters that he did not have to consent to the search, but Watters consented, to the point of insisting on the search, acting as if he "had something on his shoulders." . . . The van was searched and the shotgun, along with some marijuana and a pipe, were seized.

D. Ct. Order of July 2, 2008, at 4. In its analysis section, however, the opinion noted in passing that Watters "gave consent *before* being read the Miranda warnings." Id. at 7 (emphasis added). The hearing transcript reflects that Wright read Watters his rights before asking to search the van and that he specifically informed Watters that he did not have to consent to the search. Murphy testified that he overheard Wright giving the Miranda warnings to Watters before he opened the van door to begin the search. That Watters was read his rights before consenting to the search is not determinative of the outcome of this case, but provides further support for the district court's conclusion that Wright voluntarily consented to the search of his van.

The judgment is affirmed.

_____