# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1732

_____

United States of America

*Plaintiff - Appellee*

v.

Mark Anthony Noonan

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Dubuque

_____

Submitted: December 19, 2013
Filed: March 20, 2014

_____

Before RILEY, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

After conditionally pleading guilty to possession of methamphetamine precursors in violation of 21 U.S.C. § 841(c)(2), Mark Anthony Noonan appeals the denial of his motion to suppress physical evidence discovered after an investigative stop of his automobile which led to his arrest, and post-arrest statements elicited prior to advising him of his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

Reviewing these reasonable suspicion and <u>Miranda</u> questions *de novo*, we affirm the district court.[1]

## I. The Investigative Stop Issue

Early on the morning of March 25, 2012, shortly after the local bars closed at 2:00 a.m., Deputy Sheriff Joseph Kennedy observed and followed a black Cadillac operated by Noonan as it moved west on Highway 20 outside of Dubuque, Iowa, in a manner that aroused Deputy Kennedy's suspicion. Though he observed no equipment or traffic violation, Deputy Kennedy stopped the Cadillac after it made a second left turn off Highway 20. Driver Noonan was cooperative and not obviously impaired, but Deputy Kennedy learned from a computer check of Noonan's driver's license "that he had a valid [arrest] warrant out of Clayton County for manufacturing of methamphetamine." Kennedy returned to Noonan's car, placed him under arrest, and handcuffed him. A pat-down search uncovered a methamphetamine pipe in Noonan's front pocket. Deputy Kennedy put Noonan in his patrol car and then retrieved and opened a black backpack found on the floor inside the Cadillac, discovering several items used to manufacture methamphetamine, including an aspirin bottle containing pseudoephedrine, bottles of ether and sulfuric acid, and a mason jar containing a "white ashy substance" and emitting a strong ammonia odor.

After he was indicted, Noonan moved to suppress the evidence recovered from the Cadillac, arguing that Deputy Kennedy lacked reasonable suspicion to make the initial stop. Applying <u>Terry v. Ohio</u>, 392 U.S. 1, 20-22 (1968), we have held that an officer may "briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity." <u>United States v. Winters</u>, 491

---

[1]The Honorable Linda R. Reade, Chief Judge of the United States District Court for the Northern District of Iowa, adopting the Report and Recommendation of the Honorable Jon Stuart Scoles, Chief Magistrate Judge of the United States District Court for the Northern District of Iowa.

F.3d 918, 921 (8th Cir. 2007) (quotation omitted).  We review whether reasonable suspicion existed *de novo*.  <u>Ornelas v. United States</u>, 517 U.S. 690, 699 (1996).

In <u>United States v. Arvizu</u>, the Supreme Court re-emphasized that it is "the totality of the circumstances" that determines whether an officer has reasonable suspicion to make a <u>Terry</u> investigative stop.  534 U.S. 266, 275 (2002).  As we explained in <u>United States v. Stewart</u>:

> factors that individually may be consistent with innocent behavior, when taken together, can give rise to reasonable suspicion, even though some persons exhibiting those factors will be innocent.  "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'"

631 F.3d 453, 457 (8th Cir. 2011), quoting <u>Arvizu</u>.  Here, after an evidentiary suppression hearing at which Deputy Kennedy testified and was cross examined at length, the district court carefully marshaled the facts as found by the Magistrate Judge and applied the <u>Arvizu</u> standard:

> (1) Deputy Kennedy observed Defendant traveling westbound on Highway 20 in Dubuque, Iowa, at approximately 2:30 a.m.; (2) Defendant was traveling fifteen miles per hour under the speed limit; (3) when Deputy Kennedy, who was traveling eastbound on Highway 20, turned his marked patrol car around and caught up with the Defendant, Defendant slowed down even further, signaled a lane change and got behind Deputy Kennedy's patrol car in the lefthand lane; (4) Defendant then made a lawful lefthand turn onto Mile Hill Lane, a street Deputy Kennedy knew was occupied by businesses, including a mini-storage facility; (5) Deputy Kennedy was aware of a "rash of storage shed burglaries" in the Dubuque area, although he did not know whether the mini-storage facility on Mile Hill Lane had been burglarized; (6) Deputy Kennedy observed Defendant make a u-turn on

Mile Hill Lane and reenter Highway 20 traveling in the same direction that he had been previously traveling; and (7) when Deputy Kennedy turned around again to catch up with Defendant's vehicle, Defendant made another left hand turn onto North Cascade Road. Although some of these facts, when viewed in isolation, may be consistent with innocent conduct, Deputy Kennedy could reasonably believe that further investigation was warranted under the totality of the circumstances. *See Arvizu*, 534 U.S. at 277-78.

After careful *de novo* review of the suppression hearing record, we agree. Because local bars had recently closed, Deputy Kennedy was concerned that the car's unusually slow speed meant the driver was impaired; in his experience, "people who are impaired on alcohol and drugs have a tendency to kind of over-think things." Because the driver of the Cadillac seemed to be driving evasively, Deputy Kennedy was also concerned that the driver might be involved in another robbery of a storage facility. Together, the overly-cautious driving, time of night, evasive maneuvers, and rash of recent burglaries gave Deputy Kennedy reasonable suspicion for an investigative stop of Noonan's vehicle. Compare United States v. Rickus, 737 F.2d 360, 365 (3d Cir. 1984). The denial of Noonan's motion to suppress the physical evidence found after the stop of his car is affirmed.

## II. The Miranda Issue

After Deputy Kennedy arrested Noonan and placed him in the back of the patrol car, Kennedy told Noonan, "I'll move the car . . . and I'll take a quick look through it and then we'll be on our way." Kennedy began walking to the Cadillac. Noonan called him back and said, "There's a dude coming down here to get my car." "You might want to wait for him to get here." Kennedy replied, "I'm just going to pull the car ahead" (away from a nearby trailer park driveway). That prompted the following exchange:

Noonan:      No, seriously, he left something in my car, man.

Kennedy:     Is there meth in there?

Noonan:      No, there's no meth.

Kennedy:     Alright, what's in there?

Noonan:      He left something . . . a black bag on the floor board . . . .

Kennedy:     OK, what's in it?

Noonan:      I really don't know.

Kennedy:     Will it hurt me?

Noonan:      That shouldn't I didn't smell nothin' out of it or feel anything out of it.

                               *    *    *    *    *

             And he just called me a little bit ago . . . and asked me if I could bring him his book bag. I know there's a can of ether in there. I'm not sure what else is in there.

Kennedy:     Well, does he have a one-pot in there?

Noonan:      No, no, no, there shouldn't be no lab in there. He said there was just materials in there.

Kennedy:     Well, I appreciate the heads-up.

Deputy Kennedy did not give Noonan Miranda warnings before this exchange. After finding precursor chemicals, Deputy Kennedy called the Dubuque Drug Task Force, which completed the search of the Cadillac and took custody of Noonan. Noonan received Miranda warnings after the Drug Task Force arrived.

-5-

On appeal, Noonan argues that the district court erred in denying his motion to suppress "[a]ll incriminating statements by Defendant" because those statements were made after he was in custody, and Deputy Kennedy's questions constituted "custodial interrogation" that must be preceded by <u>Miranda</u> warnings. See <u>Rhode Island v. Innis</u>, 446 U.S. 291, 299-301 (1980). Though he concedes that Deputy Kennedy had a constitutionally reasonable basis for a warrantless, post-arrest search of the Cadillac, <u>see</u> <u>United States v. Winters</u>, 600 F.3d 963, 968 (8th Cir.), <u>cert. denied</u>, 131 S. Ct. 255 (2010), Noonan argues, as he did to the district court, that Kennedy's "words and actions [before conducting that search] were designed to elicit" Noonan's "incriminating statements relative to the contents of the bag."[2]

The district court concluded that these statements were admissible under the exception to <u>Miranda</u> for questions "reasonably prompted by a concern for the public safety." <u>New York v. Quarles</u>, 467 U.S. 649, 656 (1984). Noonan argues that the public safety exception "is intended to be narrow" and should be limited to the exigent circumstances present in <u>Quarles</u> -- the need to locate a firearm that posed an immediate risk to the investigating officers or the general public. <u>Id.</u> at 657. But the Supreme Court's holding in <u>Quarles</u> was not so narrowly circumscribed, and Noonan's broad contention is foreclosed by this court's controlling precedent:

> Our prior cases recognized that the risk of police officers being injured by the mishandling of unknown firearms *or drug paraphernalia* provides a sufficient public safety basis to ask a suspect who has been

---

[2]Because <u>Miranda</u> warnings are required before custodial interrogation, "statements volunteered by a suspect during the course of routine arrest procedures [and] custodial statements made on the suspect's own initiative are not subject to the safeguards of <u>Miranda</u>." <u>Butzin v. Wood</u>, 886 F.2d 1016, 1018 (8th Cir. 1989), <u>cert. denied</u>, 496 U.S. 909 (1990). Here, Noonan's suppression motion asserted that "all" his incriminating statements were the product of custodial interrogation. Though the issue is not before us because the district court denied the motion on a broader ground, that assertion was incorrect as to at least some of the statements.

-6-

arrested and secured whether there are weapons or contraband *in a car* or apartment *that the police are about to search*.

United States v. Liddell, 517 F.3d 1007, 1009-10 (8th Cir.) (emphasis added), cert. denied, 129 S. Ct. 627 (2008), citing United States v. Luker, 395 F.3d 830, 832 (8th Cir.), cert. denied, 546 U.S. 831 (2005), and United States v. Williams, 181 F.3d 945, 953-54 (8th Cir. 1999).

Here, Deputy Kennedy had an objectively reasonable basis to make a public safety inquiry. When asked at the suppression hearing why he asked Noonan what might be in the car, Deputy Kennedy explained:

> I've worked in law enforcement for almost 12 years in Dubuque County. I've had several run-ins with Mr. Noonan. He's known to me to be a meth cook. I knew that there was probably a pretty good chance that there might be a meth lab in the car. And due to the volatility of an active methamphetamine lab, I didn't want to get sprayed with any kind of chemical or exposed to any kind of chemical that would obviously hurt me.

This testimony was consistent with Deputy Kennedy's question to Noonan, "does he have a one-pot in there."[3] Kennedy's pointed question evidenced a justifiable concern about the dangers surrounding the *manufacture* of methamphetamine, an "inherently dangerous activity that creates substantial risks to public health and safety." United States v. Ellefson, 419 F.3d 859, 866 n.4 (8th Cir. 2005); see United

---

[3]"One pot" is a method of producing methamphetamine. United States v. White, 538 F. Appx. 731, 731 (8th Cir. 2013) (unpublished). The Governor of Iowa's Office of Drug Control Policy has issued a "One-Pot Meth Alert" warning the public that "ordinary products are dangerous when used to make meth," and to "stay away and call 911 or law enforcement" if "you suspect a one-pot meth cook." Iowa Governor's Office of Drug Control Policy, One-Pot Meth Alert, http://www.iowa. gov/odcp/docs/OnePotMethPoster.pdf (last visited Mar. 13, 2014).

States v. Walsh, 299 F.3d 729, 734 (8th Cir. 2002).  Deputy Kennedy had reason to believe that dangerous items related to the manufacture of methamphetamine might be in the Cadillac.  In these circumstances, we agree with the district court that the public safety exception to Miranda applies to Deputy Kennedy's questions regarding what he might find in the Cadillac because those questions were reasonably aimed at addressing the safety hazard posed by the manufacture of methamphetamine.

The judgment of the district court is affirmed.

_____